## ISABEL BURGOS ET AL., Plffs.,

### *v.*

## 'ANGEL VIEJO, Dft.

---

San Juan, Law, No. 1028.

IN THE MATTER OF EJECTMENT.

Conflict of Laws—Litigation During Spanish Sovereignty.

    1. Where the facts in a case pending in this court consist of acts under the Spanish sovereignty, these acts will be construed in accordance with the provisions of the laws then in force, rather than in accordance with American constitutional law.

Constitutional Law—Under Spanish Sovereignty.

    2. Under Spanish sovereignty, the Constitution of Spain contained no provisions analagous to the Bill of Rights of American Constitutions.

Real Property—Censo.

    3. Under the Spanish law a censo is in the nature of a mortgage and created a real right against the property.

Real Property—Limitation of Actions.

    4. A collateral attack upon a title acquired by judicial sale cannot be made after ten years, where the claimants were residents at the time of the sale complained of.

Courts—Proceedings—Presumption of Regularity.

    5. This court will presume that a Spanish court in a suit twenty years ago acted regularly in the matter of notice to the defendants.

Burgos v. Viejo.

Real Property—Censo.

6. A censo gave rise to a right of action which at civil law was a real action with the right to an annotation in the Registry of Property against alienation, which annotation was notice to all third persons.

Real Property—Execution sale.

7. Proceedings of the municipal court of Bayamon examined and *held* to be in accordance with the provisions of the Law of Civil Procedure.

Real Property—Limitation of Actions.

8. The fact that a censo originally covered only 100 cuerdas of land, and that on foreclosure sale 146 cuerdas were sold to satisfy the censo, is immaterial where the purchasers have been in possession in good faith for more than ten years.

Opinion filed August 11, 1916.

———

*Mr. Hugh R. Francis* for plaintiffs.

*Mr. Chas. Hartzell* for defendant.

HAMILTON, Judge, delivered the following opinion:

This is a suit in ejectment in which the original complaint was filed April 20, 1914. After various proceedings the case came to trial on June 21, 1916. Thereupon in open court the parties waived trial by jury, agreed upon a statement of facts, and the matter was submitted for decision by the court.

There was no request for a special finding of facts, but as the case was not tried or argued in detail, it will be more satisfactory for the court if the main facts found are set out. These hereinafter stated therefore are to be considered as the finding

of the court under § 649 of the Revised Statutes, Comp. Stat. 1913, § 1587.

On May 4, 1803, Miguel Candelario de Mato and his wife, Polonia Quiros, effected what is known in the Spanish law as a censo in favor of the Catholic church. The conceded effect of this was to place what amounts to a mortgage upon the property described in the complaint for the sum of 800 pesos and a payment of 50 pesos per annum. This was recorded in volume 4, page 306, of the old registry for Bayamon, where this property is situated. The property passed by conveyances through different hands until it reached Salvador Rodriguez, who lived in or near Bayamon. The property in question is a rural property known as "Frances," situated in the barrio of Minillas, municipality of Bayamon, and is composed of 146 acres of land. Rodriguez acquired this tract on April 26, 1880, during his marriage to plaintiff herein Isabel Burgos. The conveyance was duly registered in San Juan, the registry also showing that he was married at the time. The property was subject to their conjugal partnership, bienes gananciales, at the time of the death of Rodriguez. Rodriguez died about September 15, 1884, leaving him surviving Isabel Burgos, his widow, and their children, his sole heirs, the plaintiffs named in the complaint. His death and their births were duly recorded upon the records of the Catholic church according to law. At the time of his death Rodriguez was in possession of the land, and his widow and children were left in possession. About June, 1896, Manuel Diaz Caneja, as general collector of the Catholic church dues for the Capellanias, such as the censo in question, instituted a suit against Salvador Rodriguez y Ramirez and his causa habientes for $200 in the municipal court of Bayamon. The records

Burgos v. Viejo.

of this case have been lost or destroyed, but certain parts have been recovered from other sources. Thus on June 10, 1896, the municipal court of Bayamon entered a judicial order in this case, reciting that the whereabouts of Salvador Rodriguez y Ramirez and his causa habientes are unknown, and directing that the parties be "summoned for trial as prayed, setting the 3d day of July, 3 P. M., as the date on which they should appear either in person or through their attorney in fact in due form, bringing with them whatever proofs they may have in the premises; with notice that if they should fail to appear, proper action would be taken according to law." The order went on to say that "in view of the fact that the domicil of the defendants is unknown, notice of said order is published through this edict, so that the same may serve as legal summons." This order was published in the Gazeta Oficial de Puerto Rico, No. 71, June 13, 1896.

The case came on for trial, and Isabel Burgos, claiming to be the widow of said Rodriguez, appeared but was unable to establish legally her status as the wife of said Rodriguez. The case was continued until the 6th, Isabel Burgos being then present, and she recognized and acknowledged in open court the existence of the censo and the annuities for which the suit had been brought. The court entered judgment declaring Rodriguez in default and ordering the payment of 200 pesos on account of said annuities. This sentence of judgment was published by posting at the doors of the courthouse and by publication in the Official Gazette on July 11th. The judgment as published directs "Don Salvador Rodriguez y Ramirez and his causa habientes to appear and pay within three days to Don Segundo Setty in the capacity in which he has appeared in this

suit, the sum of 200 pesos claimed, together with costs. And it is so ordered and adjudged to let notice thereof be given to the parties. . . , The foregoing judgment was read and published by the undersigned judge in open court on this date." "And at the request of the plaintiff, in accordance with the provisions of arts. 282 and 283 of the Law of Civil Procedure, so that it may serve as legal notice to the defendants, whose whereabouts are unknown, it is hereby inserted in the Official Gazette of this province."

The judgment was not paid, and the property in question was duly seized and sold at public auction November 19, 1916, to satisfy the judgment, and Diaz Caneja, the representative of the church, the holder of the censo in question, was the only bidder.

The property was adjudicated to him for the sum of 1,100 pesos, of which 200 were to satisfy the judgment, 800 to cancel the censo, and 100 for the expenses of the action. The deed was executed by the judge of the municipal court to Caneja in accordance with law on December 22d of the same year. The plaintiff Isabel Burgos is shown to have had full knowledge personally from the beginning.

The property passed through two intermediate hands and was bought by the defendant May 28, 1912, from Mrs. Helen Munich, who, as the widow of Martin Filiu, had proper authority to sell. Filiu had bought from Caneja. The deeds above recited were duly registered.

1. The case at bar would, under the American system, raise interesting questions of constitutional law in connection with the point of notice. Under the American system, and particularly under the 14th Amendment to the Constitution, the matter

Burgos v. Viejo.

of due process of law might be involved. For the purposes of the present case it is sufficient to say that, while it is an American court passing upon this litigation, the facts which make up all the links occurred under the Spanish rule, and whatever rights were acquired or affected were so acquired and affected subject to Spanish, and not to American, principles. The Spanish, and perhaps the continental, view of civil law is different from the English and American. There is no such heading in the decisions of the Spanish Supreme Court, Jurisprudencia Civil, as Constitutional Law so common in American courts. A Constitution on the continent as well as in America is the fundamental law, but in Spain it is regarded as practically confined to the agencies of government. The first Spanish Constitution was the revolutionary one of 1812, and it was affirmed and abrogated from time to time in accordance with the result of different revolutions. It concerned principally public rights. The Spanish Republic was declared in 1868, the year of the abortive revolt at Lares in Porto Rico, and the next year came a republican Constitution. Monarchy, however, was restored in 1875, in the person of Alfonso XII., and the next year on June 30th was promulgated the Constitution governing Spain and its colonies at the time of the transactions now in question, and still effective in Spain. There is in the Constitution little or nothing except provisions as to the nature of the government and public rights of Spaniards in regard to the government. Due process of law as between individuals is not one of the subjects provided for. The Constitution created a definite government, and the theory of the Constitution and its practice since has been that laws passed by the government so declared are binding upon individuals. Sentencia November 23, 1906, Sup.

Burgos v. Viejo.

Ct. Spain, No. 139, 105 Jur. Civ. 774. The Spanish Constitution has no enforceable Bill of Rights such as the first ten amendments to the American Constitution, and nothing resembling the XIV. (Sonstn. in Leyes Civiles, Madrid, 1905.) It is an organic act confined to governmental powers, such as the American was before the amendments which made personal rights effective. The question before us, therefore, is not so much one of constitutional law, but whether the Code of Civil Procedure at that time effective has been carried out. The Code of Civil Procedure was extended to Cuba and Porto Rico in 1885.

2. The title now attacked is based, therefore, upon what is known to the Spanish law as a censo. Escriche Dic. Raz. s. v. Censo. Censos are not regulated by the Civil Code, §§ 1507–1566, but they are an old Spanish institution, indeed as emphyteusis go back to Roman times (D. 6, 3, L. 15, § 1. D. 2, 8). A censo is from its nature unlimited in time (Civ. Code, § 1507) but redeemable at will. The property is inheritable and may be conveyed subject thereto. The claim gives rise to a real action against the estate charged, as well as a personal action for payments in arrears (§ 1526). Many titles in Porto Rico are held under censos. A Spaniard would place upon his property what amounts to a mortgage for a specific sum to be paid to the Catholic church for religious purposes, such as masses for his soul or otherwise. This is not in the nature of mortmain, which played so great a part in English law, inasmuch as the title does not go to the church, but it amounts merely to a rent charge, whose collection, however, may involve, as in the case at bar, a suit and sale of the property. Here, again, we deal with Spanish institutions, and not with American.

Whether this would be a charitable use at common law or in the states is not material. Vidal v. Philadelphia, 2 How. 127, 11 L. ed. 205. The custom is an old one, and never disputed in Spain and Porto Rico. Indeed the right is not questioned by the plaintiffs in this case, and it is mentioned here merely by way of exclusion.

3. The first question is whether a suit to enforce a legal censo is valid when begun against Rodriguez and his causa habientes after the death of Rodriguez. It is true that a suit must ordinarily be against a living person, and the court has not been cited to any section of the Code of Civil Procedure authorizing a different course. The facts seem to show that the widow was the proper party against whom the suit should have been instituted, and also that she was present, and, although not allowed to intervene for technical reasons, still she admitted the validity of the claim. Indeed the validity of the claim is admitted by the agreed statement of facts. If this were a case on appeal from such a decision, it would be one thing. But this is a collateral attack upon a decision rendered eighteen years before the present suit questioning it was instituted, and the defendant and his predecessors have apparently been in the undisputed possession of the property during all this time under duly registered deeds. The prescription of ten years must apply. The plaintiffs are not shown to have been nonresidents, in fact the basis of their claim is that they were not nonresidents.

4. The further objection is made to the Spanish suit, that the publication of notice of the proceeding was not authorized by law. The order which was published does not direct a publication. It directs that the parties be summoned, and recites that

notice of this order is published through this edict. The Code of Civil Procedure, art. 283, requires that judgments shall "also be published by means of edicts which shall be posted at the door of the place where the sessions of the judge or court are held, a statement thereof also being made in the proceedings. The adjudging part of definite judgments shall also be published in the official newspapers in the cases and in the manner prescribed by law." Upon the maxim, Omnia rite acta præsumuntur; which is especially applicable to ancient and foreign proceedings, it must be presumed after this length of time that what was done was regularly done. This court will not presume a Spanish court of twenty years ago into error. It is not clearly shown that the residence of the present plaintiffs at the time of the first publication was known to the plaintiffs in the suit in the municipal court of Bayamon, or to the officers of that court. It is true that the widow came in after the publication, but that was the precise object of the publication. The fact that it served its purpose gives no reason to suppose that it was not necessary.

The same applies to the publication of the final decree itself, for the plaintiff and court were not satisfied that the woman who appeared was the widow and proper representative of Rodriguez. The result, therefore, is that it was proper, under art. 283, to publish this judgment also.

There is the fundamental prerequisite under any form of procedure, and especially under the carefully elaborated civil law, that the defendant must have notice of the suit against him. Sentencia, Sup. Ct. No. 46, Feb. 18, 1901, 91 Jur. Civ. 252.

The question arises whether Rodriguez being dead, notice as

against his causa habientes meets this requirement. The word is an unusual one, but its meaning is not doubtful. "Causa" means title, "causante" the person from whom the title is derived. Escriche Dic. Raz., s. v. Causante. "Causa habiente" is therefore privy, representative in the title. Notice to privies in the title of a named person is notifying them by description instead of by name. It is not shown that such suit against a class was improper under the Spanish practice.

5. So much if the proceeding is to be considered as a personal action, as is authorized by the Civil Code to collect arrears of censo. But the Code declares the censo to confer a real right, and the procedure in the case, such as the annotation in the Registry of Property, shows that parties and courts regarded this as a real action. The distinction is not precisely that of the American law between in rem and in personam, although both claim the same ancestry in Labeo, the famous lawyer of the time of Augustus. (Sohm Inst. Rom. Law, p. 98.) The terms, however, are not in the classical jurisprudence. (Sandars Justinian 37.) A suit in rem at common law is begun by a seizure of the thing, although the owner can then come in, give bond, and defend the suit. A real action in Civil Law has no forms different from other declaratory actions. It is begun in the same way and prosecuted to judgment in the same way, but differs in its nature, being for the thing, *res,* itself whether movable (personalty) or immovable (land), and in its results. A suit in ejectment is personal at common law and real in civil law. The different organic laws or codes, as they are now called, of the civil law, have a unity lacking at common law, a difference growing out of the scientific and opportunist natures, respectively, of the two systems. A real

action as to land has the great advantage of annotation in the Registry of Property (Mortgage Law, art. 42) which prevents alienation. This was the object of the provision that a censo gave right to a real action, and this annotation was a notice to all third persons interested in the property. It had its effect much the same as the seizure in the suit in rem at common law (Mortgage Law, arts. 25, 27).

Proceedings under the Spanish law were and are more the act of the state than under the American. Each step was supervised and ordered by the court. The municipal court proceeded less formally, in that, as directed by law, the proceedings were oral, but they were no less binding and according to law (Law Civ. Proc. art. 714). It cannot be said that the owners were deprived of any notice they were entitled to under the Spanish law. The judicial proceedings of 1896 cannot be disturbed under a new sovereignty.

6. The agreed statement of facts accepts the recitals of the papers in the case as true. The fullest is the deed of December 22, 1896. Besides reciting the early links in the title, this deed gives the proceedings in which the sale was had as above set out, showing that upon the judgment of default against Rodriguez, the judgment was announced in the court room, posted upon the door, published in the Official Gazette of July 11th, as already shown by the published notice itself, and that a cautionary notice was entered in the Registry of Property, afterwards changed to notice of attachment. The deed goes on to recite further that valuation was made at a total amount of 1,168 pesos provincial money, and Don Segundo Setty, attorney in fact for Diaz Caneja, thereupon asked that the property be sold at public auction. On October 26th the sale was

Burgos v. Viejo.

ordered, fixing November 19th at 9 o'clock as the time, and announcing it by edicts in the customary place and by publication in the Official Gazette of the province, all of which was done, and stating that the title was open to examination in the office of the clerk, and no bid would be considered for less than two thirds of the appraised value, and requiring a tender of 10 per cent of the valuation before any bid would be considered. All this was in accordance with the Law of Civil Procedure, arts. 1493 to 1498. On November 19th the sale was carried out by a substitute judge, the regular judge being on leave of absence, and the sale, in conformity with law, was during the public session of the court. There only appeared the plaintiff, and, in accordance with art. 1499 of the Law of Civil Procedure, the property was adjudged to him for the sum of 1,100 pesos, with the right to assign the purchase under art. 1497. The judge approved the sale, and this act was closed and signed by the judge. On the 15th of December Caneja asked that a date be set for making the deed, which was done, in accordance with art. 1512 of the same law, and thereupon at said time and place the substitute judge, Don Rafael Cobian y Romeu, in the name of Salvador Rodrigues y Ramirez, transferred the ownership and other rights to Manuel Diaz Caneja, in his capacity as collector general of the pious funds, for 1,100 pesos, 800 of which was retained because represented by the censo capital, as also 200 pesos for unpaid rent for the years 1891 to 1895, the origin of the suit, and of the remaining 100 pesos, for the payment of costs and expenses, the balance to be laid upon the table of the municipal court for the benefit of Rodriguez and his causa habientes. It was understood that this deed should be recorded and it be effective and have the rights declared

Burgos v. Viejo.

under arts. 38 and 389 of the Mortgage Law. Provision was made for payment of royal dues on transfers under certain penalty, and the whole instrument was duly executed. The notary issued the first copy on one sheet of paper of the 8th class and five sheets more of the 11th class, on the 24th of December, 1896. There follows the receipt by the liquidator of royal dues for taxes due upon the sale covered by the deed, and finally a certificate by the registrar at San Juan of February 12, 1897, that the paper was duly recorded. The proceedings so recited seem to be of the nature and in the form required by the Law of Civil Procedure and to be valid.

7. There is one defect which appears upon the paper, although it has not been argued by counsel. The recitals in the paper show that the censo as originally created by Miguel Candalaria de Mato and his wife, Polonia Quiros, was upon a tract of 100 cuerdas. The finca was afterwards enlarged by Rodriguez by the acquisition of 46 cuerdas, the whole of which he called "Frances," but there are no facts to show that the censo was extended to the new addition. On the other hand, the papers on file would not enable the court to distinguish the 46 cuerdas in question. Even if the plaintiffs were entitled to recover 46 acres, they have not by pleading distinguished it so that the court could render a decree for it. However, as the defendant and his predecessors have been in possession of the whole 146 acres in good faith for more than ten years, this uncertainty of description is immaterial and will not be taken into account in deciding the case.

It follows that the plaintiff has not made out his case, and that judgment must be entered for the defendant.

It is so ordered.